# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| UNITED STATES OF AMERICA | CRIMINAL COMPLAINT |
|---|---|
| V. | CASE NUMBER: 20-4207MJ |
| Jacob Ray Bravo. | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### Count 1

On or about August 14, 2020, in the District of Arizona, within the confines of the Fort Apache Indian Reservation, Indian Country, the defendant, JACOB RAY BRAVO, an Indian, did with malice aforethought, unlawfully kill R.C.

In violation of Title 18, United States Code, Sections 1153 and 1111.

### Count 2

On or about August 14, 2020, in the District of Arizona, within the confines of the Fort Apache Indian Reservation, Indian Country, defendant JACOB RAY BRAVO, an Indian, did intentionally and knowingly assault the victim, R.C., with a dangerous weapon, that is, a firearm, with the intent to do bodily harm.

In violation of Title 18, United States Code, Sections 1153 and 113(a)(3).

### Count 3

On or about August 14, 2020, in the District of Arizona, defendant JACOB RAY BRAVO did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, and did knowingly possess, brandish, and discharge a firearm in furtherance of a crime of violence, that is, Assault with a Dangerous Weapon, as alleged in Count 2, a felony crime prosecutable in a Court of the United States.

In violation of Title 18, United States Code, Section 924(c)(1)(A) and (c)(1)(C)(i).

### Count 4

On or about August 14, 2020, in the District of Arizona, within the confines of the Fort Apache Indian Reservation, Indian Country, the defendant, JACOB RAY BRAVO, an Indian, did with malice aforethought, unlawfully kill C.M.

In violation of Title 18, United States Code, Sections 1153 and 1111.

CC: USM + PTS

### Count 5

On or about August 14, 2020, in the District of Arizona, within the confines of the Fort Apache Indian Reservation, Indian Country, defendant JACOB RAY BRAVO, an Indian, did intentionally and knowingly assault the victim, C.M., with a dangerous weapon, that is, a firearm, with the intent to do bodily harm.

In violation of Title 18, United States Code, Sections 1153 and 113(a)(3).

### Count 6

On or about August 14, 2020, in the District of Arizona, defendant JACOB RAY BRAVO did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, and did knowingly possess, brandish, and discharge a firearm in furtherance of a crime of violence, that is, Assault with a Dangerous Weapon, as alleged in Count 5, a felony crime prosecutable in a Court of the United States.

In violation of Title 18, United States Code, Section 924(c)(1)(A) and (c)(1)(C)(i).

I further state that I am a Special Agent of the Federal Bureau of Investigation and that this complaint is based on the following facts:

See Attached Statement of Probable Cause Incorporated By Reference Herein.

Continued on the attached sheet and made a part hereof:   ☒Yes   ☐No

AUTHORIZED BY: Anthony Church, AUSA   *AWC*

Auggie Belvado, Special Agent, BIA
Name of Complainant

AUGGIE BELVADO
Digitally signed by AUGGIE BELVADO
Date: 2020.09.03 11:47:21 -07'00'
Signature of Complainant

Telephonically sworn to before me,

September 4, 2020 at 9:17 am
Date

At   Flagstaff, Arizona
City and State

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

## REDACTED AFFIDAVIT

Your affiant, **Auggie J. Belvado,** being duly sworn, deposes and says as follows:

1. Your affiant, Auggie J. Belvado, is employed by the U.S. Department of Interior (DOI), Bureau of Indian Affairs (BIA), Office of Justice Services (OJS), Southwest Region Branch of Criminal Investigations (SW BCI) with approximately seventeen (17) years of service as a Special Agent, and three and one half (3 ½) years prior law enforcement experience with the San Carlos Apache Tribal Police Department. Your affiant is currently assigned to the BIA Fort Apache Indian Agency in Whiteriver, Arizona, with primary investigative responsibility to the White Mountain Apache Tribe who reside within the exterior boundaries of the Fort Apache Indian Reservation within the District of Arizona. The information contained in this affidavit is from my personal knowledge, as well as from information provided to your affiant by other law enforcement officers and/or witnesses including those listed herein. Due to the fact that this affidavit is being made to establish probable cause, your affiant has not listed each and every fact known regarding the investigation of this incident.

2. On August 14, 2020, the White Mountain Apache Tribal Fire Department (WMATFD) and White Mountain Apache Tribal Police Department (WMATPD) were dispatched to 305 West Horseshoe Drive in the Whiteriver residential area of the Fort Apache Indian Reservation in reference to a single story home at that address being on fire. The fire department and tribal police arrived on scene and fire personnel proceeded to extinguish the fire. During the extinguishing process, the bodies of two individuals were found in the kitchen area. The bodies were that of an adult Indian male and an adult Indian female. They were obviously deceased. Both victims were lying on their stomachs and were wrapped in a blue tarp. The bodies both displayed some smoke and fire damage but the damage was not catastrophic. Fire personnel reported the find to tribal police.

3.  On August 14, 2020, I received a phone call from the White Mountain Apache Tribal Police Department and the preceding information was relayed to me. I responded to the scene.

4.  On August 14, 2020, I arrived on scene and met with Karl Leslie, Sergeant, WMATPD, and he briefed me of the following information. Sergeant Leslie was informed by fire personnel that two (2) bodies were found in the kitchen area of the residence and they were obviously deceased. Sergeant Leslie saw an adult Indian female laying on her stomach partially on top of an adult Indian male who was also lying on his stomach. Sergeant Leslie saw what appeared to be a puddle of blood under both bodies and on the faces of both victims. There did not appear to be any other obvious injuries. Sergeant Leslie recognized the male victim and believed him to be R.C. based on his previous encounters with R.C. Sergeant Leslie did not recognize the female victim. Sergeant Leslie indicated that the home belonged to L.T., and that she was renting the home to an individual identified as Jacob Ray Bravo. Sergeant Leslie stated that L.T. is currently residing out of the State of Arizona, and Bravo's whereabouts were currently unknown. Sergeant Leslie noted that it appeared that Bravo may have been removing some of his belongings from his bedroom and there was a small pile of clothing on his bed that was inside a bedsheet. Sergeant Leslie said that he was informed by Justin Pike, Tribal Detective, WMATPD, that contact was made with R.C. and Bravo approximately two (2) days prior to the fire and that they both indicated that they lived at the residence. Sergeant Leslie and I proceeded into the residence through the front door of the residence. I could see that there was extensive fire and smoke damage throughout the entire home. As I walked past the wood stove in the living room, I observed blood spatter on the corner of a brick wall behind the wood stove with a large puddle of blood on the floor. I saw the two bodies, and they were as Sergeant Leslie described. As we were making our observations, a fire flared up in the attic space and it began to spread quickly. We had to evacuate for our safety.

5. On August 14, 2020, I met with Duston Whiting, Fire Investigator, White Mountain Apache Tribe, and briefed him on the investigation. Fire Investigator Whiting stated that he would begin his cause and origin investigation the following day after the fire was completely out when it would be safe to enter back into the residence.

6. On August 15, 2020, Fire Investigator Whiting proceeded with his investigation and I proceeded to process and photographs the scene. The bodies of the victims were recovered and identified by their fingerprints as R.C. and C.M. Both R.C. and C.M. had an external examination of their persons to look for obvious injuries. R.C. had sustained an unknown injury to the right side of his head and there was blood coming out of the area in or around his right ear. R.C. did not appear to have any other obvious injuries to his person. C.M. also had an unknown injury to the right side of her head and there was blood coming out of the area in or around her right ear. C.M. sustained a significant blunt force injury to the left side of her mouth and it appeared that she had bled from both her mouth and nose. There were no other obvious injuries to C.M.'s person. The bodies of R.C. and C.M. were placed into body bags and the bags were sealed with evidence tape. A local mortuary company removed both R.C. and C.M. from the scene.

7. On August 15, 2020, I collected an empty .22 caliber ammunition box outside of the residence. A live .22 caliber long rifle round was located and collected on a dirt trail south of the residence.

8. On August 15, 2020, I was briefed by Fire Investigator Whiting and was informed that he collected a plastic bottle of lighter fluid and an empty bullet casing that is consistent with a .22 caliber long rifle cartridge. Fire Investigator Whiting indicated that evidence at the scene indicated the fire was started intentionally.

9. On August 15, 2020, Jonathan Tsosie, conducted an interview with F.L.G. who stated that she had text messages between C.M. and L.T. the morning of the fire. In the text messages, C.M. stated that Jacob Ray Bravo and two other individuals were at the house with her.

10. On August 18, 2020, I made contact with L.T. and requested screen shots of her conversation with C.M. L.T. later provided me the screen shots of her conversation with C.M. The final entry made by C.M. was on Friday (August 14, 2020) at 4:43 a.m., and it read, "Jacob's up now."

11. On August 20, 2020, autopsies were performed on the bodies of R.C. and C.M. at the Pima County Office of the Medical Examiner in Tucson, Arizona. At the conclusion of the autopsy for R.C., it was determined that R.C. sustained a small caliber single gunshot wound to the right side upper back area of his head. R.C. did not have any other injuries to his person. The bullet was recovered inside the head of R.C. At the conclusion of the autopsy for C.M., it was determined that C.M. sustained a small caliber single gunshot wound to the right side upper back area of her head. C.M. sustained a significant blunt force injury to the right side of her mouth and some of her teeth were knocked out. This injury was more than likely caused by being struck with an unidentified blunt object. C.M. did not have any other injuries to her person. The bullet and fragments from the bullet were recovered from inside the head of C.M.

12. On August 27, 2020, I interviewed E.L who stated that she was present at the time R.C. and C.M. were killed. E.L went to Jacob Ray Bravo's home to give him a ride to a friend's house in "Chinatown," and then took Bravo back to his house. When they returned to Bravo's home, E.L went into the house with Bravo and saw that R.C. was lying on the living room floor a few feet from a woodstove. It looked like R.C. was having a seizure. Bravo became angry and wanted to know from C.M. and another person E.L did not know, what had happened to R.C. Bravo was holding a small rifle and E.L saw Bravo strike C.M. on the face with the weapon. C.M. fell onto a small brick wall behind a wood stove and she laid on the floor, motionless. E.L could see that C.M. was bleeding from her mouth and her nose. E.L saw that R.C. was starting to get up and Bravo, without saying a word, or without warning, shot R.C. one time to the back of his head. Bravo then went to where C.M. was lying and he shot her one time to the back of her head. E.L said that she was scared and just stood there in shock. E.L saw Bravo put both R.C. and C.M.

into a blue tarp and he started to drag the bodies toward the kitchen. That is when E.L said that she went outside to wait in her car and Bravo walked after her. Bravo asked her to give him a ride to the Apache Service Station to get some gas. Bravo told E.L that they were going to burn the bodies and cut off their heads. They went to the Apache Service Station but could not purchase gas because they did not sell gas cans. E.L said she told Bravo that she had a funeral to go to and her mother was waiting for her. Bravo told E.L that she had better not say anything about what she saw or the same thing would happen to her. E.L dropped Bravo off at his place and then she went home.

13. Jacob Ray Bravo, R.C., and C.M. are all enrolled members of the White Mountain Apache Tribe and reside within the exterior boundaries of the Fort Apache Indian Reservation.

14. The events described above occurred within the exterior boundaries the Fort Apache Indian Reservation, Indian Country, within the District of Arizona, on or about August 14, 2020.

15. Based upon the aforementioned information, your affiant believes that there is probable cause to support a violation of federal law, in that Jacob Ray Bravo, an Indian, did intentionally and knowingly, with malice aforethought use a firearm to unlawfully kill R.C. and C.M, in violation of Title 18, United States Code, Sections 1153 and 1111. There is also probable cause to believe that Jacob Ray Bravo, an Indian, did intentionally and knowingly assault R.C. and C.M. with a firearm with intent to do bodily harm in violation of Title 18, United States Code, Sections 1153 and 113(a)(3). There is probable cause to believe Jacob Ray Bravo did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, and did knowingly possess, brandish, and discharge a firearm in furtherance of a crime of violence, that is, Assault with a Dangerous Weapon, as alleged in Counts 2 and 5, felony crimes prosecutable in a Court of the United States in violation of Title 18, United States Code, Sections 924(c)(1)(A) and (c)(1)(C)(i).

16. This affidavit is sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.**

_____  
Executed on (Date)

AUGGIE BELVADO  
Digitally signed by AUGGIE BELVADO  
Date: 2020.09.03 11:49:01 -07'00'

Auggie J. Belvado  
Special Agent  
U.S. Bureau of Indian Affairs  
SW Branch of Criminal Investigations  
Fort Apache Agency

__X__ Sworn by Telephone

Sworn to and subscribed on this 4th day of September 2020:

Date/Time: September 4, 2020 at 9:17 am

_____  
CAMILLE D. BIBLES  
United States Magistrate Judge